**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CRIMINAL ACTION** |
| v. ) | |
| ) | **No. 12-20066-01-KHV** |
| **EDUARDO PEREZ-ALCALA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

On December 15, 2015, the Court sentenced defendant to 162 months in prison.  On November 5, 2020, defendant filed a Motion For Compassionate Release [] Pursuant [To] 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #2282), which seeks release based on the Coronavirus Disease 2019 ("COVID-19") pandemic.  The government opposes defendant's motion.  See Government's Response To Defendant's Motion For Compassionate Release (Doc. #2292) filed November 23, 2020.  On November 6, 2020, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant.  Defendant has not filed a reply.  For reasons stated below, the Court dismisses defendant's motion.

**Factual Background**

On October 3, 2012, a grand jury charged Eduardo Perez-Alcala and some 50 other defendants with conspiracy to manufacture, to possess with intent to distribute and to distribute 280 grams or more of cocaine base and to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing cocaine.  See Second Superseding Indictment (Doc. #402), Count 1.  The indictment also charged defendant with conspiracy to

commit money laundering.  Id., Count 2.   On May 22, 2013, defendant pled guilty to both counts. See Plea Agreement (Doc. #637).

The Court attributed 326 kilograms of cocaine to defendant for a base offense level of 38 under the United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(1).  See Presentence Investigation Report ("PSR") (Doc. #1810) filed August 11, 2015, ¶ 133.  The Court applied a two-level enhancement because defendant was in the business of laundering money and a four-level enhancement because he was an organizer or leader of criminal activity that involved at least five participants.  Id., ¶¶ 134, 136.  The Court granted defendant a three-level reduction for acceptance of responsibility.  Id., ¶¶ 140–41.  Defendant had a total offense level of 41 with a criminal history category I for a guideline range of 324 to 405 months in prison.  Id., ¶ 170.  On December 15, 2015, the Court sentenced defendant to 162 months in prison on Counts 1 and 2, with the terms to be served concurrently.  Defendant did not appeal.

Defendant currently is confined at D. Ray James Correctional Facility, a privately operated prison in Folkston, Georgia under contract with the Bureau of Prisons ("BOP").  D. Ray James Correctional Facility houses 416 inmates.  See BOP, CI D. Ray James, https://www.bop.gov/locations/ci/drj (last visited Dec. 12, 2020).  As of December 21, 2020, 197 inmates at the facility—including defendant—had tested positive for COVID-19.  See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus, Private Facilities (last visited Dec. 21, 2020).  Three of the inmates who contracted COVID-19 died.  See id.  The remaining 194 inmates—including plaintiff—have recovered.  See id.

Defendant is 37 years old.  He states that because of his obesity and race, and the conditions at D. Ray James Correctional Facility, he is at high risk of contracting COVID-19 and

of severe illness or death if he contracts it. With good time credit, defendant's projected release date is October 27, 2023. Defendant currently is not subject to a detainer from the Bureau of Immigration and Customs Enforcement ("ICE"). Even so, as a permanent resident alien and based on his drug trafficking conviction, he is subject to removal from the United States. See Plea Agreement (Doc. #637) filed May 22, 2013, ¶ 17 (because defendant pleading guilty to federal drug trafficking offense, removal presumptively mandatory). Defendant asks the Court to grant compassionate release.

## **Analysis**

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so. See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c).

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The Court may entertain requests for compassionate release only upon a motion of the BOP, however, or of defendant after defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Here, the government argues that BOP records do not reflect that defendant submitted a request to the warden. See Government's Response To Defendant's Motion For Compassionate Release (Doc. #2292) at 8 n.5. On August 31, 2020, defendant deposited his request in the internal mailbox. A prison staff member returned it to him after explaining that the facility currently did not have a warden. See Motion For Compassionate Release [] Pursuant [To] 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #2282) at 2. The government does not dispute that no warden was at the facility to accept defendant's request or explain what administrative remedy was available to defendant at the facility. On the present record, the Court finds that based on the absence of a warden and the refusal of prison personnel to accept or consider defendant's request for relief, defendant has shown that he had no available administrative remedies and that pursuit of such remedies was futile.[1] Accordingly, defendant has satisfied the exhaustion prerequisite to filing a motion for compassionate release.

Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress specifically authorized the Sentencing Commission to issue policy statements defining

---

[1] The government also argues that defendant's stated reason for his administrative request—the fact that he had contracted COVID-19—did not assert the specific reasons that he asserts in the present motion, i.e. obesity, race and conditions at D. Ray James Correctional Facility. Inmate Request To Staff (Doc. #2282-1) filed November 5, 2020 at 1. As explained above, because the facility did not have a warden and it refused to consider defendant's request, any lack of specificity in defendant's administrative request is immaterial. In any event, because defendant requested release because he had contracted COVID-19, an administrative investigation of such a request would include his specific risk factors and the conditions at the facility.

"what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied." United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories. U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1.[2]  In addition, the policy statement requires that before granting relief, the

---

[2] Application Note 1 provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—
   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—
      (I) suffering from a serious physical or medical condition,
      (II) suffering from a serious functional or cognitive impairment, or
      (III) experiencing deteriorating physical or mental health because of the aging process,
   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(continued . . .)

Court must find that defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)). In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release. See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)). Unless the grounds for resentencing fall within one of the specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request. See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

---

[2](. . . continued)

    (B)  Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C)  Family Circumstances.
      (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.
      (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D)  Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1.

Here, defendant seeks compassionate release based on obesity, race and the risk that he will again contract COVID-19 at D. Ray James Correctional Facility. None of these factors are specifically identified in the Section 1B1.13 commentary under Subsections (A) through (C).[3] Accordingly, for defendant to establish extraordinary and compelling reasons for release, he must rely on the catchall provision of subsection (D).

Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(D). To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense

---

[3] The government concedes that a medical condition that elevates an inmate's risk of becoming seriously ill if he contracts COVID-19 may constitute an extraordinary and compelling reason for release. See Government's Response To Defendant's Motion For Compassionate Release (Doc. #2292) at 16–17. The government argues that during the COVID-19 pandemic, medical conditions such as obesity satisfy the criteria under subsection (A) of the Section 1B1.13 commentary, i.e. a chronic condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. Id. at 20. Here, subsection (A) does not apply because unless and until defendant again contracts COVID-19, his obesity does not limit his ability to provide self-care within the prison environment. See U.S.S.G. § 1B1.13, cmt. n.1(A) (defendant must show chronic condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"). Subsection (B) does not apply because defendant is 37 years old. See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age). Subsection (C) does not apply because defendant seeks relief based on his own circumstances, not family circumstances. See U.S.S.G. § 1B1.13, cmt. n.1(C) (relief based on death or incapacitation of caregiver of minor child or incapacitation of spouse where defendant would be only available caregiver).

and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)). Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference." Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP." U.S.S.G. § 1B1.13, cmt. n.1(D). In an unpublished decision, the Tenth Circuit implicitly recognized that in addition to the BOP, courts now can make such a determination. See Saldana, 807 F. App'x at 819–20.[4] The Court likewise concludes that on a defense motion, it may—independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary. U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. Israel, No. 95-00314-CR, 2020 WL 4362258, at *4 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons

---

[4] In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range. See id. In affirming the district court's decision to deny defendant's request for a reduced sentence under the catchall provision of subsection (D), the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons under the catchall provision. See id.

warrant release); see also 28 U.S.C. § 994(t) (Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples"); cf. United States v. Gunn, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020) (no "applicable" policy statement for inmate motions for compassionate release so district judges must consider only statutory criteria of "extraordinary and compelling reasons"); United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020) (because Section 1B1.13 not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district court discretion to consider whether any reasons extraordinary and compelling).

In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent." United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting *extraordinary*, Webster's Third International Dictionary, Unabridged (2020)). "Compelling" means "tending to convince . . . by forcefulness of evidence." Id. (quoting *compelling*, Webster's Third International Dictionary, Unabridged (2020)). As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence. See Saldana, 807 F. App'x at 819.

Here, defendant seeks release based on obesity, race and the risk that he will again contract COVID-19 at D. Ray James Correctional Facility. At age 37, defendant is relatively young. In addition, defendant has not submitted a release plan and he appears to be subject to removal from the United States. D. Ray James Correctional Facility had a COVID-19 outbreak including three inmate deaths earlier this year, but no inmates presently have tested positive and failed to recover. Defendant has not shown that compared to placement in ICE custody and eventually in Mexico,

he faces a heightened or imminent risk of exposure to COVID-19 at D. Ray James Correctional Facility.  See United States v. Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).

COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters.  Even so, on this record, the COVID-19 risks at D. Ray James Correctional Facility cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Even if defendant's obesity, race and risk of again contracting COVID-19 at D. Ray James Correctional Facility were considered "extraordinary and compelling" reasons for release, the Court would deny relief after considering the various factors under 18 U.S.C. § 3553.  A sentence of time served, or approximately 122 months with good time credit, is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.  In particular, defendant committed a significant drug trafficking offense.  As part of the offense conduct, defendant was responsible for 326 kilograms of cocaine.  See PSR (Doc. #1810), ¶ 133.  He also was in the business of laundering money and was an organizer or leader of the criminal activity that involved at least five participants.  Id., ¶¶ 134, 136.  A reduction of defendant's sentence to approximately 122 months would reflect a significant disparity from his current sentence of 162 months, which was well below the low end of his guideline range.  On balance, the factors under Section 3553(a) do not support a reduced sentence.

In sum, defendant has presented no evidence of "extraordinary and compelling" reasons that warrant his release under Section 3582(c)(1)(A).   The Court therefore dismisses defendant's motion for release for lack of jurisdiction.   See Saldana, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

**IT IS THEREFORE ORDERED** that defendant's Motion For Compassionate Release [] Pursuant [To] 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #2282) filed November 5, 2020 is **OVERRULED**.

Dated this 21st day of December, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge